**STATE OF FLORIDA v. JACK WILSON and CLAUDIA WILSON, his wife.**

**STATE OF FLORIDA v. FELTON COLEMAN and WILLIE MAE COLEMAN, his wife.**

25 So. (2nd) 860                                    January Term, 1946
April 30, 1946                                              En Banc

   *Glenn C. Mincer;* for appellant.

   *E. F. P. Brigham,* for appellees.

   *J. Tom Watson,* Attorney General, *Cecil T. Farrington,* Assistant Attorney General, and *L. E. Thomas,* as amicus curiae.

BUFORD, J.:

   In 1937 the legislature enacted chapter 17833. Section 1 of this act reads as follows:

   "Section 1. GRANT OF POWER.—For the purpose of promoting health, safety, morals or the general welfare of the community, the Board of County Commissioners of any county having a population of not less than 180,000 according to the last preceding state census is hereby empowered within territory of such county, not included in any municipality, to regulate and restrict the height, number of stories and size of buildings and other structures on land and water, the

percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, the use of land for junk yards and automobile trailer camps and the location and use of buildings, structures and land for trade, industry and other specific use."

And section 12 of the Act provides as follows:

"Section 12. PENALTIES.—Any person, firm, partnership or corporation violating any of the provisions of this Act or who shall fail to abide by and obey all orders and resolutions promulgated as herein provided for shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by fine not exceeding $500.00 or by imprisonment not to exceed thirty days, or by both such fine and imprisonment."

Under this grant of power the County Commissioners on August 14, 1945, adopted a resolution and maps wherein it was sought to segregate areas within which property could be occupied by negroes and not occupied by Caucasians, and vice versa, which resolution, inter alia, contained the following:

"NOW THEREFORE, BE IT RESOLVED, by the Board of County Commissioners of Dade County, Florida, that boundaries heretofore approved by this Board, or as the same shall be hereafter amended or altered, shall constitute the dividing line between the White and Colored people in Dade County, Florida.

"And be it further resolved, that a map or plat showing the method of designating such boundaries and such dividing lines between the White and Colored people, referred to herein, be attached hereto, and, by reference, made a part of this resolution."

Thereafter, the appellees, being negroes, purchased property within the White Zone of occupancy as designated by the resolution and maps and moved into such property and were residing there when Informations were filed by the County Solicitor charging them with violating the so-called Zoning Ordinance which had been adopted by the County Commissioners under authority claimed to exist under the provisions of chapter 17833, supra. Whereupon

capiases issued and the appellees were arrested thereunder and the appellees respectively sued out writs of habeas corpus challenging the validity of the ordinance which constituted the basis of the charge against them.

On hearing the Circuit Court entered its judgments wherein it was said, inter alia:

"It is the opinion of this Court that Chapter 17833 Acts of the Florida Legislature for 1937 does not vest authority in the Board of County Commissioners of Dade County, Florida, to zone any area in Dade County, Florida, for use and occupancy based on color, either by its express terms or by implication. . . . "—and entered its judgments discharging the petitioners.

From these judgments the State appealed. The cases have been consolidated and are considered together.

We have carefully considered Chapter 17833, supra, and find nothing in the Act which authorizes the County Commissioners of any county affected thereby to adopt a resolution attempting to zone the county so as to preclude occupancy of any property in any part of the county by either the White or the Negro race solely on account of the difference in color or race.

It is, therefore, unnecessary for us to now determine whether or not the legislative act would have been constitutional, had it contained provisions which attempted to authorize the enactment of a resolution such as is here under consideration.

For the reasons stated, the judgments of the Circuit Court are affirmed.

So ordered.

CHAPMAN, C. J. TERRELL, BROWN, THOMAS, ADAMS and SEBRING, JJ., concur.